### In re Raymond G. BOND.

### No. 90–1023.

United States Court of Appeals,
Federal Circuit.

Aug. 3, 1990.

Rehearing Denied Nov. 1, 1990.

Keith D. Beecher (argued), Jessup, Beecher & Slehofer, Santa Monica, California, for appellant.

Murriel E. Crawford (argued), Asst. Sol., Office of Sol., Arlington, Va., for appellee. With her on the brief, was Fred E. McKelvey, Sol.

Before ARCHER, Circuit Judge, BALDWIN, Senior Circuit Judge, and TASHIMA, District Judge.*

PER CURIAM.

This appeal is from the decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences (Board), Appeal No. 89–1286, dated June 30, 1989, affirming the examiner's final rejection of both claims of Raymond G. Bond's patent application Serial No. 840,-007, filed March 17, 1986, entitled "Remote Turn-on Control System for Telephone Answering Machine." We vacate-in-part, reverse-in-part and remand.

## I

The application involves one of the remote control features of a telephone answering machine, the remote turn-on feature. The machine owner who forgot to set the machine to answer (*e.g.*, it was set to play back messages) can call the machine and set it to answering mode remotely by ringing the phone a certain number of times. Once the machine is set, it will remain in this mode and answer calls until it is set to another mode. In this respect, the application involves technology essentially identical to the device patented by Curtis, et al., U.S. Patent No. 3,723,656 (Curtis).

Bond claims a combination of the above technology and a delay means which would prevent the machine from answering the owner's initial call for a predetermined period of time after it has set itself to answer (claim 1). Bond argues that the prior art does not leave sufficient time to hang up after setting the machine to answer, and the owner therefore may incur toll charges. Claim 1 was rejected under 35 U.S.C. § 102 over Curtis. Bond also claims the use of a microcomputer containing an internal counter to implement the control and delay structures (claim 2). Claim 2 was rejected under 35 U.S.C. § 103 over Curtis in view of Hanscom.[1]

## II

■ The Board affirmed the examiner's rejection of claim 1. "For a prior art reference to anticipate in terms of 35 U.S.C. § 102, every element of the claimed invention must be identically shown in a single reference." *Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 677, 7 USPQ2d 1315, 1317 (Fed.Cir.1988). These elements must be arranged as in the claim under review, *Lindemann Maschinenfabrik v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1458, 221 USPQ 481, 485 (Fed.Cir. 1984), but this is not an "ipsissimis verbis" test, *Akzo N.V. v. United States Int'l Trade Comm'n*, 808 F.2d 1471, 1479 & n. 11, 1 USPQ2d 1241, 1245 & n. 11 (Fed.Cir.

---

* District Judge A. Wallace Tashima of the Central District of California, sitting by designation.

1. Hanscom was awarded U.S. Patent No. 4,400,-586 for a "Remote Message Repeat Control For Telephone Answering System." Hanscom's claimed invention includes a means for retrieving messages remotely using a "beeper" to alert the machine that it should perform that function. The Hanscom specification provides that the essential control functions are performed by a microcomputer.

1986), *cert. denied,* 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987). "[A]nticipation is a fact question subject to review under the clearly erroneous standard." *In re King,* 801 F.2d 1324, 1326, 231 USPQ 136, 138 (Fed.Cir.1986).

Claim 1 provides for a combination of control means, first circuit means, second circuit means, and

> delay means included in said control means for delaying the seizure of said telephone line by said second circuit means for a predetermined time interval after said telephone answering machine has been set to said automatic answering mode so as to permit the calling party to get off the telephone line and avoid telephone charges.

"It is axiomatic that, in proceedings before the PTO, claims in an application are to be given their broadest reasonable interpretation consistent with the specification, [ ] and that claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art." *In re Sneed,* 710 F.2d 1544, 1548, 218 USPQ 385, 388 (Fed.Cir.1983) (citations omitted). The specification provides that this delay is implemented through digital means as follows:

> [W]hen the telephone answering machine is so set to the automatic answer mode, an internal counter in the microcomputer Z107 delays the time until pin 31 goes high, so that actual line seizure is delayed. This permits the calling party to get off the line before any toll charges are assessed.

Once pin 31 "goes high," the answering machine immediately seizes the line. By contrast, seizure of the line is delayed in the Curtis device through analog means.[2] A delay occurs between the time the machine sets to answer—in response to, for example, the tenth ring signal—and the seizure of the line—which takes place only on receipt of the next ring signal.[3]

The disclosed and prior art structures are not identical, but the claim may nonetheless be anticipated. While a "means-plus-function" limitation may appear to include all means capable of achieving the desired function, the statute requires that it be "construed to cover the corresponding structure, material, or acts described in the specification and *equivalents thereof.*" 35 U.S.C. § 112 ¶ 6 (emphasis added); *see In re Iwahashi,* 888 F.2d 1370, 1375 n. 1, 12 USPQ2d 1908, 1912 n. 1 (Fed.Cir.1989) (applying § 112 ¶ 6 to PTO proceedings, and harmonizing prior case law); *Johnston v. Ivac Corp.,* 885 F.2d 1574, 1580, 12 USPQ2d 1382, 1386 (Fed.Cir.1989) ("section 112 ¶ 6 operates to *cut back* on the types of *means* which could literally satisfy the claim language," (emphasis in original)). However, the Board made no finding that the delay means of claim 1 and that embodied in the Curtis device are structurally equivalent. Accordingly, its decision as to the anticipation of claim 1 is deficient and must be vacated. Since structural equivalency under section 112 ¶ 6 is a question of fact, *see Pennwalt Corp. v. Durand–Wayland,* 833 F.2d 931, 933–34, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (*in banc*), the

---

**2.** The board found that "Curtis disclosed a delay means (R1–R5, C3–C4 and the fixed time between rings) which delays the seizure of the telephone line for a predetermined time after the machine has been set." It would seem from our review of the Curtis disclosure that resistors R1–R5 and capacitors C3 and C4 do not function to produce any delay *after* the device is energized, *i.e.,* set to the automatic answering mode. Rather, their role seems to be limited to producing the delay that precedes the energizing of the answering device. If our understanding of the Curtis disclosure is correct, the delay experienced by the Curtis device between the time the device is energized and the time it seizes the telephone line is a function solely of the fixed time between telephone rings, which delay is not produced by structure within the Curtis device. In view of our vacatur and remand of the board's decision regarding claim 1 on other grounds, we need not further consider the question of whether there is structure in Curtis to delay seizure of the line after the device is energized.

**3.** The board found that in the Curtis device "the line is not seized immediately but only *after* one additional ring" (emphasis added); the Curtis specification discloses that the incoming call is answered by the answering machine "on" the next ring. *See* col. 4, lines 16–17.

court will not reach that question in the first instance.[4]

### III

■ The Board rejected claim 2, which depends from claim 1, on the ground that the use of a microcomputer to achieve the delay would have been obvious to one skilled in the art. "A determination that an invention would have been obvious under § 103 is a conclusion of law based on fact. [ ] The degree to which the determination involves facts, and is thus subject to the 'clearly erroneous' standard ... is that degree required to erect a foundation of facts sufficient to support the legal conclusion." *Ryco, Inc. v. Ag–Bag Corp.*, 857 F.2d 1418, 1423, 8 USPQ2d 1323, 1327 (Fed. Cir.1988) (citations omitted). *See also In re Caveney*, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed.Cir.1985).

Claim 2 modifies claim 1 by defining the control and delay means thereof as "compris[ing] a microcomputer having an internal counter to delay the seizure of said telephone line until the counter reaches a predetermined count." In its opinion, the Board stated:

> Curtis discloses an analog circuit for counting calls [sic, rings].... Hanscom discloses that it was conventional to count calls [rings] digitally in a telephone answering machine by means of a microcomputer.... We hold that the artisan, having the suggestions of Curtis and Hanscom before him at the time the invention was made, would have found it manifestly obvious to combine these teachings to obtain the subject matter of claim 2.

We are convinced that this holding does not recognize that there are critical differences between the claimed invention and the prior art. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966) (the difference between the claimed invention and the prior art is one of the four factual inquiries pertinent to any obviousness inquiry under 35 U.S.C. § 103). It also does

not reflect the admonition of this court that "[o]bviousness cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching, suggestion or incentive supporting the combination." *Carella v. Starlight Archery and Pro Line Co.*, 804 F.2d 135, 140, 231 USPQ 644, 647 (Fed.Cir.1986); *see also ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577, 221 USPQ 929, 933 (Fed.Cir.1984). The Board's analysis is a classical example of a hindsight reconstruction of the claimed invention.

Bond's claimed invention includes a microcomputer which functions to delay seizure of the telephone line once the device has been set to the automatic answering mode. The Board found that the Curtis device experiences some delay after it has been energized and before it seizes the telephone line. Such a delay is only inherent in the Curtis system and Curtis neither places any importance on this delay nor specifically notes that line seizure should be further deferred. Hanscom, the secondary reference, discloses a familiar telephone answering machine that employs a microcomputer which delays seizure of the telephone line until after a preset number of rings, while using a microcomputer to count the number of incoming rings. Hanscom is silent with respect to whether a device like that disclosed by Curtis should embody a delay following activation of the answering mode and before line seizure, or how such a delay should be implemented. For the purpose of its combination with Curtis, the Hanscom patent merely discloses that microcomputers can be used as a means for counting telephone rings entering an automatic answering machine.

When the claimed invention is contrasted with the Curtis and Hanscom devices, a distinct difference becomes apparent—the claimed invention embodies a microcomputer placed within the system which delays seizure of the telephone line for a predetermined period of time following activation of the device's answering mode. Unless the Curtis and Hanscom disclosures would

---

**4.** In light of this disposition, the court need not resolve the question of how closely synchro-

nized are the ring signals heard by the calling and called parties.

have suggested to one of ordinary skill in the art at the time the invention was made that a microcomputer should be so employed, claim 2 is not unpatentable under 35 U.S.C. § 103 on this record. *See Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1050–51, 5 USPQ2d 1434, 1438 (Fed.Cir.) *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). On balance, we conclude, given the factual findings of the Board (including the finding that the Curtis device *does* contain some structure which is involved in producing the inherent delay in seizing the telephone line after activation of the automatic answering mode, *see* footnote 2, *supra* ), that even though the Curtis device does experience some inherent delay, the cited references would not have suggested the claimed invention to one of ordinary skill. Neither reference expressly or implicitly suggests that a microcomputer assembly should be embodied in a Curtis-like device in such a manner as would produce the inherent, yet unmentioned, delay experienced by the Curtis device.

### IV

In conclusion, the Board's decision is (1) vacated insofar as it holds that the invention of claim 1 of Bond's application is anticipated by the Curtis device; (2) reversed insofar as it holds that claim 2 is unpatentable under 35 U.S.C. § 103 over Curtis in view of Hanscom; and (3) remanded. On remand, the Board should consider whether the delay experienced by the Curtis device after activation of the answering mode and before seizure of the telephone line is caused by any "structure" within the Curtis device and, if so, whether this "structure" is equivalent to that disclosed in Bond's specification as exemplary of the claim 1 delay means. Only if each of these inquiries is answered in the affirmative is the invention defined in claim 1 anticipated by the Curtis disclosure.

VACATED–IN–PART, REVERSED–IN–PART, and REMANDED.